Good morning. May it please the court, Justin Lugar for the appellate landowners. This case simply put is about subject matter jurisdiction. At the outset of our argument today I think it's important to set out the general or the default rule from which we start our analysis and it's a general statement that this court has made clear in Bennett v. SEC in the 2016 case. Federal District Courts generally have original jurisdiction over all civil actions arising under the Constitution laws and treaties of the United States and provisions for agency review for administrative agencies do not restrict judicial review unless the statutory schemes displays a fairly discernible intent to limit jurisdiction and the claims at issue over the type Congress intended to be reviewed within the statutory scheme. That is the Thunder Basin Standard that is at the heart of this issue and what brings us here today is that exception to jurisdiction and whether it strips the district court of subject matter jurisdiction in our particular case. Now before the court is a narrow, narrow question of whether the statutory scheme set forth in the Natural Gas Act limits the district court's ability to hear a case about the constitutionality of Congress's original delegation of the governmental power of eminent domain and how that actually plays out in practice. Fortunately, we have Thunder Basin, we have its progeny and we have the recent case of Bennett to guide us in our analysis and we rely heavily on that. So taking all of that guidance. I'm sure the other side does too. Absolutely. We're going to dive straight in. There's a different interpretation than what you're giving. Yes, sir. And so what I would propose to do is to really cut right to the heart of the two key points here and just dive right into it. From our perspective, meaningful judicial review is the most important aspect of this entire case. And so the court in Bennett here, two years ago, said the exact same thing. That the most important factor in the Thunder Basin standard is analyzing meaningful judicial review and that even standing alone that can warrant reversal in this case. If we were to rule, let's say, not in your favor, do you lose this opportunity to bring this issue? Practically, yes. For all intents and purposes, we do not have a path to have this issue heard in a meaningful manner. Now, if the court were to direct and say that FERC is the right body... So I'm trying to understand that. It's a nuanced... To answer your question, my question seems to be, no, you don't lose it, but practically and meaningfully you do because of the time and what's going to happen, I think, in the interim. Absolutely. And that's part of what this court's purpose in analyzing this case is, is to look and understand what meaningful judicial review, if the court were to find that FERC is the appropriate body to first deal with this and then we go to a Court of Appeals, whether it be this one or D.C., to go through the administrative process, there would be judicial review at some point, potentially. But the reality of these situations is there is no meaningful... Well, there would be on a Court of Appeals level. Right, but it's not meaningful judicial review. And that's where the rubber sort of meets the road here, Your Honor. You don't mean the Court of Appeals wouldn't give it meaningful review. You mean the result wouldn't be meaningful. Absolutely. Absolutely. Yeah. And so it would be less meaningful to the landowners, obviously, here if by the time they get their complaints heard, you know, the pipe is already in the ground, a $3.7 billion project, the likelihood, I think we all know, of something like that being ripped out of the ground is pretty slim. And so we look at Bennett and the other cases that guide us that say that federal judicial review must be meaningfully accessible. That's the first part. And here it's not meaningfully accessible because you have to wait too long before the harm occurs. And proceedings that pose some risk of additional or irremediable harm beyond the burdens associated with the normal dispute resolution process, which we all know can take time, they do not constitute meaningful judicial review. And we know from this Court's particular analysis of the McNary v. Haitian Refugee Center case that the court should look to the how it actually funds. So we place great emphasis on that particular point. And finally, we know that meaningful judicial review is lacking. We're delayed correction of the wrong that would damage a party, quote, in a way that is not recompensable through retroactive payments. That's the Matthews v. Eldridge standard. And so here the plaintiffs have nowhere meaningfully to go to have their claims heard in any meaningful manner. They can't go to FERC. They can't get to the Court of Appeals within the effectively barred. And they can't raise their complaints in condemnation proceedings, which are already ongoing. There's uniform case law that says that is not possible. I think everyone agrees that you can't have these sorts of challenges heard in the condemnation proceedings. So instead, FERC admits, MVP confirms this, that FERC actually possesses no discretion whatsoever to grant or deny the power of eminent domain because the Natural Gas Act automatically conveys that power upon FERC's issuance of a certificate. So walk us through Thunder Basin. Because that seems to set the framework for how we analyze these kind of cases. Right. And so what I've done is I've started with the second prong. And if it pleases the Court, I'd like to continue on with that. And then I'll go back to the first prong. Because as this Court has identified, meaningful judicial review is the most important factor. And we think that weighs heavily in favor of permitting the landowner's claims to go forward. So the second thing under the meaningful judicial review that I want to highlight is these tolling orders. Even if FERC could and would hear this case, which they won't, they bar the courthouse doors with the use of these tolling orders. And that's the practicality we're talking about that McNary indicates for us. Congress contemplated swift action on these petitions for rehearing. They gave FERC 30 days to make a decision. So what does FERC do? FERC has found an end-around. They skirt around the actual requirement of Congress mandate. And so they will issue a petition for further reconsideration. But then they actually refuse to do anything until there's no chance to actually go to the Court of Appeals before a pipe is in the ground. And so FERC and MVP, they run roughshod of this. They don't actually mention it specifically that the Court or sorry, FERC has used tolling orders in 99% of the cases. So when you say tolling orders, you are saying they are required to do something? This is 30-day? There's a 30-day requirement. It's cited in our brief. It's in the FERC regulations. They have, or under the Natural Gas Act, they have 30 days. There's a default rule. If they do not order, make a finding on the petition for rehearing within 30 days, it automatically is granted. And so what they do is they sit on it. They find an end-around. They say, well, wait, we're going to consider a rehearing, but we're going to take our time in doing it. And 99% of the cases in the last eight years that Appalachian Mountain Advocates have analyzed, and I've cited to that in the brief, 99% of those cases, they have not, they've granted these tolling calls. You can't get to the Court of Appeals through the administrative action. And 74 out of 75 of those, they have denied the relief ultimately. Sometimes as long as over 200 days after the petition. But they're not required to complete it within 30 days? No, they have to make a decision about whether to hear it or whether to not hear it. And so they found this sort of gap in the law, if you will. Well, let's, we can sit on this. And so it, without them ruling on that petition for rehearing, and you have to do that before you can go to the Court of Appeals, they've effectively barred the courthouse doors from litigants to be able to get there. And so that weighs in with this meaningful judicial review. There is not a meaningful way to get to the Court of Appeals through the FERC process. There's no practical way. And we look at the realities of the law and how it operates on the ground. The trees are down. The sinks, the springs are sunk. The damage is done. And it's damage that really can't be compensated. And that's what the Eldridge Test teaches us. So the old adage, which is cliche, but I'll say it anyways, justice delayed is justice denied. That's exactly the situation that we have here if we're not able to go to the district court and have these important claims heard. And I'm going to switch now to... And I'll tell you, that's because you were saying there would be irreparable injury here. Absolutely. From the inmate domain. Tell me about your argument there. I want to, I don't quite see it developed as well. Sure. The harm that would arise, and this goes to the nature, intent, and purposes as well of the statutory scheme we're dealing with here. But the harm that would occur to these landowners if they can't have their claims heard is their core challenges to the delegation, the original delegation of power from Congress through the Natural Gas Act and ultimately to private parties of the governmental power of eminent domain. And if we get to the end of this whole thing and a court determines, wait a minute, you didn't have the power in the first place to give the power of eminent domain, then I just learned today from one of our landowners, a tree that started growing in 1774 is no more. It's gone. It takes 100 years for these things to come back. Once you sink a spring, you can't get it back. The aesthetic enjoyment, which is important to people, you can't compensate for that. You can't undo those harms. Yes, trees grow back. It takes hundreds of years. Water maybe can recover depending on the damage that may be done. But there is an imminent harm just basically to the landowner's right to exclude all others that they don't want there. This is something that's been thrust upon them. It's not something that they've asked for. They have not sought to be regulated to put it another way. So that is the harm. Second, I wanted to address the issue of holy collateral. Tell me where it is if I can find that argument in your briefs or record. The irreparable harm is sort of an outgrowth of the meaningful judicial review standard. There's some discussion in our brief particularly about how... Meaningful review? Right. It's under the meaningful review section. But not irreparable harm? Right. It's a sort of knock-on effect. The question is whether or not meaningful review has to be review that's prompt and that gives you a chance to have your relief granted. Here there is no chance for that relief to be granted if all the harm has occurred and there's no way to fix it. You can't undo that harm. So it's built in with the facts of what imminent domain actually means here and how construction of a pipeline actually works and what it does to the land. But that's not the determinative factor. Meaningful judicial review really is. On the holy collateral point, because I think FERC and NVP make quite to do about that, they say that NVP goes as far as to say that any claim that would invalidate or modify a FERC order is subject to administrative agency review under 717R. But this court in Bennett found that the ambiguity of this holy collateral prong under the Thunder Basin analysis reduces that factor's independent significance. And we know as well that there are multiple readings of the term holy collateral. So in Matthews v. Eldridge the question was whether a due process claim was entirely collateral to the substantive claim of entitlement. And here in Bennett this court asked the question whether it's the vehicle, the claim is the vehicle by which you seek to reverse agency action. And of course we contend that our case is more akin to Matthews and Free Enterprise than Bennett, particularly our delegation claim. Because the question of delegation is not procedurally entwined whatsoever with any area of FERC's coverage. In fact, if we are correct and if the delegation was improper, which we think it was, it doesn't do anything to invalidate the FERC order otherwise. It doesn't impede the regulatory scheme. FERC is still able to engage in their congressionally mandated duty, which is to analyze the environmental impact of these projects, to regulate the production and transportation of natural grass across interstate lines. They can still do all of that. They just won't be able to use the power of eminent domain and convey that to Mountain Valley Pipeline or any other pipeline. And so it doesn't it is not intrinsically entwined with the purpose and scope of the regulatory scheme that was envisioned by Congress. In fact, we would go so far as to argue that it furthers FERC's regulatory scheme. Because one of FERC's stated standards, and this is one of the things we're challenging in the underlying complaint as a sort of byproduct of the delegation problem, is that if the market truly demanded this, if this was truly in the public need and for public use, then the private markets would support the economic construction of such a project. And so they wouldn't need to use the power of eminent domain. You could go out and acquire your easements or fee simple property and route it exactly where the market permits you to do it. And it would be cost effective. And then the end users would pay the price that would make that work. And so actually... You've got about two minutes. You argued that point pretty well in your brief. I want to get back to this meaningful review. Yes, sir. On the Thunder Basin. Thunder Basin. I don't exactly agree with it, but it's the Supreme Court law. Thunder Basin makes it clear that even if it is something in the nature of a constitutional claim, delayed is not a basis for saying you're not going to get meaningful review. And there's a whole bunch of cases out there that say that. If I'd been writing them, I'd have probably written them differently. But I've got to follow the law. So distinguish those cases for me and tell me why, when you bring a constitutional claim of this sort, the delay of it, as you say, meaningfulness of it is going to be impacted. Sure. And I would point the court to cases like McNary, which is a subsequent case after Thunder Basin that talks about what meaningful judicial review is. And there it instructs courts to look at the practical realities. And one of those practical realities is the delay. And in that situation, McNary, the plaintiffs in that case had to submit to a process that was going to ultimately result in them being expelled from the country. And so by virtue of having to engage in the regulated activity and engage with the regulatory body, they were guaranteeing that they had no real option to gain the relief they want. And so we would extrapolate the same principle for our case here. So in this case where, as you say, 99% of the time there is delay, it is guaranteed delay. It's every time. Absolutely. That's exactly right. 99% is almost 100%. A distinction from Thunder Basin. Absolutely. I mean, we have a situation in none of the Supreme Court cases have we had a situation where the administrative agency has created a hurdle so high that one cannot jump over it and has no control about going around it. You can't go through it and you can't go over it until they say so. And so that's the easiest way to distinguish all of these cases is to say that none of the Supreme Court cases or any other appellate court cases that have dealt with these issues have seen such a barrier constructed between agency review and the next step to the Court of Appeals. And so I'll point you to that point. I see I'm out of time, so unless you have any other further questions right now, I'll wait for a rebuttal. Thank you. Ms. Chiu. Good morning. May it please the Court. Susanna Chiu for the Commission. Go right to that last point there. Does the McNary case do away with Thunder Basin's what seems to me a pretty general statement that even if it's a constitutional issue, delay  in the Court of Appeals is not going to be sufficient to say you're denied a meaningful review? Your Honor, going to that point, McNary does not change anything about Thunder Basin. In fact, McNary predated Thunder Basin. It came out in 1991. Thunder Basin came out in 1994. So it doesn't change the analysis in any way. What about the practical reality that here it's guaranteed that there will be a delay in these sorts of things, because as opposing counsel said, it's 100% effectively. Your Honor, it's true that there is delayed review here, but as Thunder Basin and as this Court held in Bennett, delayed review is still meaningful judicial review. What is the delayed review? Is that when you have 30 days and they just sort of keep extending it and you never know when it's going to end? No, not exactly, Your Honor. So if I can address the 30-day issue, it's not correct that Congress required the agency to act on rehearing requests of certificate orders within 30 days. It doesn't require them to complete them by those days. It just simply says... Right. Okay. That's right, Your Honor, and that's just from the statute. That's 15 USC Section 717RA. And it's been long held by multiple courts, including courts in three separate circuits, that this particular provision in Section 17RA does not require the Commission to act on the merits conclusively in terms of these rehearing requests within 30 days. Going back to 1969, the D.C. Circuit adopted the agency's interpretation which was that this statutory provision is intended only to allow the Commission to deny rehearing applications by silence. So the Commission does regularly use these so-called tolling orders, and that's because it's simply impossible for the agency to address the voluminous rehearing requests that come to it in each of these pipeline cases within 30 days. It does need more time. The agency is trying to act expeditiously with all of these applications, but it wouldn't be possible to meaningfully address all of the issues raised by all parties. So it's not possible to provide meaningful review? Within 30 days. That's what you just... Within 30 days, it's not possible for the agency to address within 30 days the merits of the hearing requests. But, as we know from Thunder Basin, and from Bennett and Elgin, it is sufficient that the Court of Appeals addresses all the merits of the issues that were pending before the agency at a single time at the end of the agency proceeding, and of course at a single court. How would you define meaningful? I would define meaningful review as review by the appellate court on a petition for review of the Commission's orders on rehearing in a pipeline case. That's the definition of review, but how would you define meaningful? It has to... How would you define  meaningful? It has to do with the review that the Court traditionally gives to all of these pipeline projects at the conclusion of the agency proceeding. It is meaningful because the Court is considering all of the issues relating to the Commission's pipeline authorization at a single time, and the Court has all of the arguments from all of the Thunder Basin... And the Court can give a remedy, correct? I'm sorry, Your Honor. And a remedy can be received. Yes, Your Honor. And how can that be received if everything, so much has already been done? It's true, Your Honor, that the pipeline has started construction and that is moving along, but a remedy still can be provided. And what would the remedy look like? A prevailing party's remedy look like after the pipeline is in the ground and proceeding along its route? In the event that the Court vacated or remanded a FERC order authorizing a pipeline, the Commission would take that back on review. And pipeline that's been placed into the ground can be excavated. It is possible to remediate environmental damage that has occurred, if it has occurred. So there are ways to remediate damages. Has that ever happened, that you've excavated a pipeline after a meaningful review and found that that was an inappropriate grant by FERC? I'm not aware, Your Honor, specifically. But I will say that the Courts have remanded the agency in some instances on specific issues related to pipeline authorizations. So in some cases the agency has had to redo environmental analysis or conduct supplemental environmental analysis. It certainly is possible for the agency to conduct additional proceedings and to do additional things to address any concerns that the Courts may have. The Supreme Court in the Free Enterprise case did allow those plaintiffs to go to district court on the Constitution claim and set forth some reasons. Why does that not temper the Fundamason case? Well, Your Honor, I think this Court's decision in Bennett highlights why the Supreme Court in Free Enterprise allowed those particular claims to go forward. As you know, both Bennett and the Free Enterprise Fund involved the same provision of the Securities and Exchange Act, Section 78Y, I believe. It was an exclusive judicial review scheme similar to this one. But the distinction was that there was really no avenue to judicial review in Free Enterprise. The plaintiff there was challenging the public company accounting board, which was created by the Securities and Exchange Commission. Excuse me, the members are appointed by the Securities and Exchange Commission. So there was actually, in that case, no order of the SEC that could have resulted in judicial review. By contrast, in Bennett, and as in this case here, there is an administrative proceeding. Here, as in Bennett, the appellants are parties to that administrative proceeding, and they will have access to the Court at the conclusion, but in the Supreme Court, the appellants will be able to bypass those procedures and bring a freestanding complaint in district court to try to sidestep the Congressional procedures. Your Honors, the Commission is moving expeditiously on the hearing requests. Can I go back to the Meaningful Review and Thunder Basin? In Thunder Basin, the Court placed emphasis on the fact that there, the petitioner was not barred as a practical matter from all access to the courts. Here, it appears they are barred as a practical matter from all access to the courts until the damage is done. Isn't that an important distinction? Well, Your Honor, I would not agree that the Commission is barring access to the courts. The Commission is following the processes that are laid down by Congress in the Natural Gas Act, and under that process, the appellants do have access to the courts once the agency proceeding is completed. It's true that under the certificate order, there is eminent domain authority that confers with that certificate order and with the notices to proceed that FERC issues subsequently, but that is a function of the Congressional design. It's the same scenario as Thunder Basin, Elgin, and Bennett, where courts have held that a statutory exclusive judicial review scheme, even if it delays access to the courts, still provides access and meaningful judicial review. Unless there are additional questions, Your Honors. Thank you, Ms. Chu. Thank you very much. Mr. Massey. Good morning. Good morning. Let's hear your version of if the pipeline construction can begin while a petition for re-hearing is pending for a long period of time, how is that providing meaningful judicial review? May it please the Court, I'm Wade Massey from Mountain Valley Pipeline. It may indeed please answer the question. Yes, sir. I would say this, that there are cases pending right now in the D.C. Circuit that raise these same issues. There are three of them that are pending or filed. Two of them were for direct review of the FERC certificate on the theory that the certificate should not be tolled and that the tolling order is ineffective. So this adequacy question is before the D.C. Circuit in those two cases. That's good, but this one is before us. We are not bound by the D.C. Circuit. So tell me, how is, if the pipeline construction is to begin on dependency of the petition for re-hearing, that is judicial review? D.C. Circuit is a nice circuit, but they are no more than we are. They are not the Supreme Court. We would be interested to see what they say, but we are independent of that. Give us a little something to work into the 4th Circuit year on year. I understand. The point, though, is that under the Natural Gas Act, there's got to be a choice of where the cases go. They can go to the D.C. Circuit or they could have been filed here. That was up to the people that were filing the case. But under the Natural Gas Act, they only go to one or the other. So in this particular case on the Mountain Valley side, the cases were filed in the D.C. Circuit, raising these same arguments. All of those points can be and are being raised in that court as we speak. This Court would say that the D.C. Circuit, while it's independent, obviously, is not meaningful. Oh, it's certainly meaningful. You're asking us to defer or wait and see how they come out on it? Not wait and see it all, but simply note that the jurisdiction has attached in the D.C. Circuit and those cases ought to proceed to a decision. The structure of the Act is not to have multiple forums adjudicating these things as they may be filed, but to have one forum, which the Natural Gas Act says should be exclusive. You're suggesting that we don't have jurisdiction in this case? You have jurisdiction on appeal from the Court. Oh yeah, from the Federal. But the District Court did not have jurisdiction in this case. That is correct. You're suggesting that we have to dismiss this appeal. Am I correct? Not dismiss the appeal in the sense that it was untimely filed or some reason like that. You have the right to review a decision of the District Court finding no jurisdiction. I'm simply suggesting that the decision of the District Court finding no jurisdiction is correct. But that's no more than every appellee does here. But you're suggesting something more than that. You start off, as you said, the D.C. Circuit has this and the statutory scheme is you pick one or the other. The others pick before this one. Therefore, I'm just trying to use logical steps in your argument. And you're giving two arguments. The main argument you're giving is what Jess was giving, that the District Court didn't have jurisdiction because you'd have gone through the administrative. And you say, well, the D.C. Circuit has three of them. The natural gas cases go there, they could have picked up here. We ought to listen to that very reasonable court up there or consider that it's been filed because I don't think anything's come out of there yet. All I'm saying is we're the Fourth Circuit and we can issue an opinion. And I don't think it gets reversed because we decide to give our opinion. They can give it for a different reason. I will simply apologize if I was not clear, but I was simply trying to make the point that the concept was asserted that we can't get into court, the doors of the courthouse are barred to us, all those arguments we just heard, and they're being exercised right now was my point in the D.C. Circuit. Your point is that they could have filed this in the D.C. Circuit and gotten this meaningful review quicker. Exactly. Now, so that's what they've already done. I mean, landowner groups have already done that. So unless you do it in the D.C. Circuit, you can't get it anywhere else, right? No, they could have filed it here, could have filed it in this court, or they could have filed it in the D.C. Circuit. It's either or under that 717-R B. It can go either way. But the idea that, oh, we're all, my hands are in court, my lands are being taken, there's no review for any of this, that's simply incorrect. So you're saying that the first choice of any landowner is preclusive for all landowners, for example. If the first wave of landowners went to the D.C. Circuit, you're saying another wave of landowners would be precluded from coming to the Fourth Circuit. Are you saying that? I don't know that that precise situation exists right now. I'm sorry, I apologize. Yeah, but are you saying that that would be the case? The way I think the statute is worded, Your Honor, is that if there are multiple filings on review, that the jurisdiction attaches to the court where the record is first filed. I think is the way that's resolved. Just to cut down on the controversy issue. I have a little time left. I would submit that there's a step even before Thunder Basin here, and the step is City of Tacoma, which is cited in the briefs, under the Natural Gas Act, Supreme Court of the United States, 1958, which held that the Natural Gas Act governs review of orders of FERC, and this is a quote, all issues inhering in the controversy. And so the first question I submit for the court in a case like this is, what is the controversy? And I think from what we've heard today, and you take a look at the complaint, the controversy is the project. That's what the overall controversy is about. That's the gist of the complaint. That's what is complained about in the complaint. That's what's complained about in the argument. And if you define the controversy that way, then the question is, what issues are covered? And City of Tacoma says all issues. All issues inhering in the controversy. That would be factual issues, legal issues, statutory issues, constitutional issues, all issues. I would simply leave you with this quote from the Tenth Circuit, which said in 1989 in the Williams case, we would be hard-pressed to formulate a doctrine with a more expansive scope than that bar. Thank you. Appreciate your  time. You have a few minutes. If it pleases the court, I'd like to start with the last point that Mr. Massey just made about City of Tacoma. I'd point out first that was a case decided before Thunder Basin, and I think if you take that to its logical end, we run into a situation where no claims whatsoever, whether they're a delegation challenge or some other issue, could ever go outside of FERC in that's precisely what Thunder Basin says can't happen. There are certain situations where you have explicit divestments of jurisdiction. This is not one of those. And you have implicit divestment. And it's an exception to the general rule that the district courts, that's where we started today, that the district courts have original jurisdiction. And so if that case were the end-all be-all here, we wouldn't need Thunder Basin. We wouldn't have any of this analysis at all. And FERC would have more power than the federal courts, which I don't think is the case. And so when he talks about the controversy it inheres in the FERC process. In this case, that's simply not correct. The controversy here is the delegation and the effects of that delegation. That's in our complaint. It's in our motion for preliminary injunction. We explain how the process is deficient. It's the root cause and the symptoms. And it all stems from the overly broad delegation. And that's the ultimate core of this case. And so I want to jump next to what does the remedy look like? Because I think that's one of the most important points I've heard today. And what FERC tells us is, well, we don't know because we've never had this situation before. That is indicative that there is no chance for meaningful judicial review here. You have to have a final order from FERC before you can get to the Court of Appeals to challenge it. And if they sit on these, using these tolling orders, they sit on the petition for re-hearing for 212 days, 85 days, 300 days, it's a rush to get the pipe in the ground as fast as possible. That's the reality. We all know it. And the only way, the only potential way, and I'm not suggesting in any way the Court does this, but the only possible way to get around these tolling orders and make sure that there's meaningful judicial review is to do one of two things. It's to find ineffective the tolling orders, which is not really the challenges before this Court. That's what's pending in D.C. according to Mr. Massey. Or two, you can't let FERC allow construction to proceed while these important questions are out there being resolved. And of course, the part that's absent from FERC's statement there is that construction proceeds. It is going on as we sit in this Court and right now trees are coming down, earth is being disturbed, and the pipe is being prepared to put in the ground. What about Mr. Massey's argument that this can be raised with the ongoing proceedings in the D.C. circuit? Well, the tolling order issue and whether or not that's a lawful exercise of FERC's authority certainly can be raised in there, but our landowners in this case and the case before this Court is about delegation and whether or not the District Court properly has jurisdiction to hear those claims, not whether or not tolling order. That's just sort of the factual matrix in which we find ourselves is the reality here is that FERC uses these tolling orders to bar the doors. And that factors into the Thunder Basin analysis, and it shows here, it's the most important factor that shows why the District Court must possess jurisdiction in this case, because otherwise there's nowhere for any of these landowners to go. So you're making the facial challenge of this statute? Yes, it is absolutely, and it is... In all circumstances, this can't be constitutional. It's a facial challenge, right? It's not just your circumstance, but all circumstances. Absolutely, and what gave our landowners standing... What about the people who, let's say, they get a hearing within 30 days and there's no delay at all? I thought a lot of your arguments today have been on, seeming like as if it's an applied challenge. Well, because that's the scenario that these particular landowners face. That's the one that's not going to be prevailing on facial challenge. It has to be broad enough that there's no reasonable circumstances and scenarios that this would be constitutional for a facial challenge, correct? Absolutely, and it's to the delegation. So we're here on the narrow question of jurisdiction as to whether or not that falls within the FERC regulatory process. And the tolling orders and whether you get heard within the FERC process is just one factor, generally, to talk about as far as whether or not you can get meaningful judicial review under the Thunder Basin Standard. And so I think there's sort of two... Congress set out the scheme for how you... what courts you go to, right? Right, and this... As you know, we are inferior courts, district, and as much as we rail ourselves in this Constitution, we're defined as inferior courts subject to jurisdiction as Congress may fit to do so at different times, correct? Absolutely, and Congress could have explicitly divested the district court and thus this court from jurisdiction. They didn't do that. And that's where Thunder Basin comes in. The Supreme Court has told us what implicit divestment looks like and under what situations that can occur. And that has trickled down through the progeny of cases after Thunder Basin. So we have to look at those factors to determine it. And so the only way around meaningful judicial review in this case is if construction just doesn't occur until these challenges are heard. And so we submit that the district court has jurisdiction here and we'd ask you to reverse and remand it. Thank you, Your Honor. Thank you so much. We can go if you want to. We'll come down and greet counsel and proceed to our next case. Thank you.
judges: Roger L. Gregory, James A Wynn, Jr., Stephanie D. Thacker